IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| UNITED STATES,<br><br>v.<br><br>DAVID CRESPO,<br><br>               Defendant. | HONORABLE KAREN M. WILLIAMS<br><br>No. 1:13-cr-00428-KMW-2<br><br>**MEMORANDUM OPINION** |

**WILLIAMS, District Judge:**

## I.    INTRODUCTION

This matter comes before the Court on two motions for compassionate release filed by defendant David Crespo ("Defendant") pursuant to 18 U.S.C. § 3582(c)(1)(A). Defendant also requests the appointment of counsel to assist him in this matter. The United States has opposed Defendant's requests. For the reasons set forth below, Defendant's motions are denied.

## II.    BACKGROUND

Defendant is serving a federal prison sentence for his role in a large-scale drug conspiracy. In November 2014, Defendant pleaded guilty to one count of conspiracy to distribute more than 500 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). (ECF No. 56.) He was sentenced by the Honorable Robert B. Kugler (ret.) to a term of 120 months' imprisonment, to run consecutively to any other federal sentence being served, followed by a five-year period of supervised release. (ECF No. 107.) Defendant's projected release date is April 16, 2026.[1] (ECF No. 186 at 2.)

---

[1] The Court takes judicial notice that Defendant has since been transferred to a residential reentry facility (*i.e.*, a halfway house), where he will complete the remainder of his sentence. This does not moot Defendant's Motions, as he still remains in the custody of the Federal Bureau of Prisons.

This is not Defendant's first request for compassionate release. After the Federal Bureau of Prisons ("BOP") declined to seek compassionate release on his behalf, Defendant filed numerous motions and letters with the Court between 2021 and 2022 seeking a reduction of his sentence. (ECF Nos. 152, 155, 159, 160–67, 170–72.) In those filings, Defendant argued that the COVID-19 pandemic—together with his hypertension, obesity, a facial cyst, an occipital lipoma, and various mental health conditions—constituted "extraordinary and compelling" circumstances warranting relief under 18 U.S.C. § 3582(c)(1)(A). He also asserted that the BOP was failing to provide adequate medical care. Judge Kugler denied Defendant's motions on their merits, and the U.S. Court of Appeals for the Third Circuit affirmed. *See United States v. Crespo*, No. 13-cr-00428, 2022 WL 3572846 (D.N.J. Aug. 19, 2022) (Kugler, J.), *aff'd*, No. 22-2700, 2023 WL 3172173 (3d Cir. May 1, 2023).

A year later in May 2024, Defendant submitted another compassionate-release request to the BOP, this time asserting a need to care for his teenage children due to the alleged "incapacitation" of their mother and primary caregiver. (ECF No. 181 at 11–13.) Defendant also cited his rehabilitative efforts and his plans for reentering the community. The BOP did not grant Defendant's request, and he now seeks relief from this Court. He has filed a "Motion for Moderate Reduction of Sentence or Compassionate Release," which he later supplemented with an "Emergency Supplemental Motion for a Moderate Reduction of Sentence or Compassionate Release." (ECF Nos. 187, 189.[2]) The United States has opposed Defendant's requests. (ECF No. 186.)

---

[2] Defendant also submitted a motion for an extension of time to submit a reply in further support of his initial compassionate-release motion. Defendant has since filed that reply, which the Court has accepted and considered in connection with this Opinion.

## III.    LEGAL STANDARD

As a general rule, federal courts "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Congress has created a limited exception to this rule in the compassionate-release statute, which permits courts to reduce a previously imposed term of imprisonment for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). Congress did not define the phrase "extraordinary and compelling reasons," but has instead directed the United States Sentencing Commission to describe what should qualify. *See United States v. Rutherford*, 120 F.4th 360, 365 (3d Cir. 2024) (citing 28 U.S.C. § 994(t)). The Commission's relevant guidance is set forth in U.S. Sentencing Guideline § 1B1.13. *See* U.S.S.G. § 1B1.13 (as amended by 88 Fed. Reg. 28,254, effective Nov. 1, 2023).

As amended by the First Step Act of 2018, the compassionate-release statute permits defendants to petition courts directly for a reduction in sentence, but only after satisfying the statute's prescribed administrative procedures. First, the defendant must submit a request to the BOP to bring a motion on his behalf, and then give the BOP thirty days to respond. *See United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)). He may file a motion in court only after either (1) he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion," or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility"—whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). Once these administrative prerequisites are satisfied, a court may reduce a term of imprisonment only if it finds that such a reduction is (1) warranted by "extraordinary and compelling reasons"; (2) "consistent with applicable policy statements issued by the Sentencing Commission"; and (3) "supported by the factors set forth in [§] 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Andrews*, 12 F.4th 255, 258 (3d Cir. 2021).

The defendant bears the burden of first establishing his eligibility for compassionate release by showing "extraordinary and compelling reasons" warranting a sentence reduction. *See Rutherford*, 120 F.4th at 365. However, the decision to grant compassionate release is "purely discretionary." *Andrews*, 12 F.4th at 259; *see also United States v. Leinheiser*, No. 22-2256, 2023 WL 4341876, at *3 (3d Cir. July 5, 2023). Thus, even if a defendant establishes his eligibility for compassionate release, a court may still deny his motion if, after considering the applicable factors under 18 U.S.C. § 3553(a), it concludes that a reduction is not warranted. *See* 18 U.S.C. § 3582(c)(1)(A); *Andrews*, 12 F.4th at 259.

## IV.    DISCUSSION

Defendant moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A).[3] He has also requested the appointment of counsel to assist him in this matter. The Court addresses each request in turn.

### A.  <u>Compassionate Release</u>

Defendant seeks compassionate release on the theory that "extraordinary and compelling" family circumstances exist because the mother of his five teenage children is allegedly unable to provide adequate care for them. Based on information he allegedly received from a New Jersey child-welfare case manager, Defendant claims that his children are experiencing certain "behavioral problems," and that their mother is reportedly struggling to "control and take care of [them]," such as getting them to school. (ECF No. 181 at 5–6, 12–13.) These circumstances,

---

[3] It is undisputed that Defendant's request to the Bureau of Prisons identified only two grounds for compassionate release: alleged caregiver incapacitation and his rehabilitative efforts. Accordingly, to the extent Defendant attempts to advance any additional basis for relief for the first time in his motions, the Court will not consider it because it was not first presented to the BOP, as required by 18 U.S.C. § 3582(c)(1)(A). *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (noting that failure to first present request to BOP "presents a glaring roadblock foreclosing compassionate release"); *United States v. Icker*, No. 23-2255, 2023 WL 6457821, at *2 (3d Cir. Oct. 4, 2023) (affirming denial of compassionate release) ("Before filing his motion, which comprised new arguments and asserted additional facts not included in his prior motions, he was required to ask the [BOP] to do so on his behalf and give the BOP 30 days to respond . . . which he admittedly did not do.").

Defendant maintains, suggest that the mother is becoming increasingly "incapacitated to raise [his] children," which he attributes to her reported diagnoses of multiple sclerosis and narcolepsy, as well as an alleged history of drug abuse. (*Id.* at 13.) Invoking U.S. Sentencing Guideline § 1B1.13, Defendant argues that his release is necessary so that he can serve as a more suitable caregiver.

Defendant's arguments do not establish a basis for release. Under U.S. Sentencing Guideline § 1B1.13(b)(3)(A), "extraordinary and compelling" family circumstances include the "death or incapacitation of the caregiver of the defendant's minor child." The Guidelines do not define "incapacitation," though courts have consulted BOP policies for handling inmate compassionate-release requests based on spousal incapacitation. *See, e.g.*, *United States v. Fanelli*, No. CR 16-110, 2025 WL 2267636, at *6 (D.N.J. Aug. 8, 2025); *United States v. Walker*, No. CR 19-928, 2024 WL 580152, at *3 (D.N.J. Feb. 13, 2024). BOP Program Statement No. 5050.50 states that a caregiver is "incapacitated" if she either (1) is "completely disabled," meaning that she "cannot carry on any self-care and is totally confined to a bed or chair," as a result of a "serious injury" or "debilitating physical illness"; or (2) suffers from a "severe cognitive deficit," such as "Alzheimer's disease or traumatic brain injury that has severely affected" the caregiver's "mental capacity or function." BOP Program Statement No. 5050.50 (Jan. 17, 2019), https://www.bop.gov/policy/progstat/5050_050_EN.pdf (last visited February 3, 2026).

Defendant's motions fail for two independent reasons. First, he offers no competent evidence, medical or otherwise, showing that his children's mother has any of the medical conditions he alleges, much less establishing that she is incapacitated. To demonstrate his eligibility for compassionate release, Defendant was required to submit "medical documentation or other competent proof" establishing that the children's mother is incapacitated. *United States v. Ragan*, 2023 WL 4487772, at *4 (D.N.J. July 12, 2023). Because he has not done so, his motions fail at the outset. *See Fanelli*, 2025 WL 2267636, at *6 ("Without medical documentation

establishing a family member's incapacitation, courts have refused compassionate release."); *see also United States v. Duprey*, 2024 WL 3873938, at *2 (D.N.J. Aug. 19, 2024) (denying compassionate release where defendant offered only letters from family members describing medical condition).

Second, even accepting Defendant's assertions as true for present purposes, the circumstances he describes do not amount to "incapacitation" within the meaning of § 1B1.13(b)(3)(A). As reflected in the BOP's guidance, "incapacitation" denotes an exceptionally debilitating condition that renders a caregiver physically or cognitively *incapable* of performing basic caregiving tasks—an understanding consistent with the ordinary meaning of the term. *See also* MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/incapacity (defining "incapacity" as "the quality or state of being incapable," especially a "lack of physical or intellectual power") (last updated Jan. 31, 2026); *see also* BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "incapacitation" as "[t]he quality, state, or condition of being disabled or lacking legal capacity"). In line with that understanding, courts in this Circuit have found incapacitation for severe, function-limiting impairments. *See, e.g.*, *United States v. Walker*, No. 19-cr-928, 2024 WL 580152, at *3 (D.N.J. Feb. 13, 2024) (finding inmate eligible for compassionate release where caregiver was receiving intensive care, dependent on machine-assisted life support, and was unlikely to resume caregiving functions); *United States v. Seals*, 509 F. Supp. 3d 259, 263 (E.D. Pa. 2020) (finding incapacitation where caregiver had stage-4 pancreatic cancer that rendered her physically unable to care for minor child).

Here, Defendant does not allege that his children's mother is physically or cognitively incapable of caring for the children. Indeed, he identifies no concrete functional limitation of any kind. His motions are best understood to be raising serious concerns about the adequacy and reliability of the mother's caregiving. The Court does not minimize the gravity of those concerns.

But "extraordinary and compelling" circumstances do not, and cannot, encompass every situation in which a caregiver is facing hardship or providing suboptimal care, even when that hardship can be attributed to a medical condition. *See United States v. Al Hunaity*, No. 18-723, 2024 WL 982044, at *5 (D.N.J. Mar. 7, 2024) (observing that the presence of even a "serious" medical condition does not necessarily entail a finding of incapacitation).

In short, Defendant has neither demonstrated nor alleged any extraordinary and compelling circumstances warranting compassionate release. In reaching this conclusion, the Court acknowledges Defendant's emphasis on his post-conviction rehabilitative efforts. Those efforts are certainly commendable. But as Defendant himself acknowledges, rehabilitation alone cannot be considered an extraordinary and compelling reason to justify a reduction in sentence. *See* 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13(d). Accordingly, Defendant's motions for compassionate release are denied.

### B. Appointment of Counsel

Incarcerated defendants do not have a constitutional or statutory right to counsel when seeking compassionate release under 18 U.S.C. § 3582(c). *See United States v. Millhouse*, No. 20-3633, 2021 WL 3280789, at *3 (3d Cir. Aug. 2, 2021). Nonetheless, the Court may, in its discretion, "appoint counsel for an indigent litigant after considering several factors." *United States v. Richardson*, No. 3:12-CR-00576, 2022 WL 3214410, at *3 (D.N.J. Aug. 9, 2022) (quoting United States v. Burney, No. 1:18-CR-606, 2021 WL 4963253, at *2 (D.N.J. Oct. 25, 2021)). "In determining whether to appoint counsel in compassionate release cases, a court must first determine whether the defendant's claim has some merit in fact and law." *United States v. Balter*, No. CR 93-536, 2024 WL 2105553, at *4 (D.N.J. May 9, 2024) (quoting *United States v. Duncan*, No. 21-cr-187, 2022 WL 1213466, at *2 n.2 (D.N.J. Apr. 22, 2022)). If the claim is meritorious, a district court may appoint counsel after considering:

1. the [movant's] ability to present his or her own case;

2. the difficulty of the particular legal issues;

3. the degree to which factual investigation will be necessary and the ability of the [movant] to pursue investigation;

4. the [movant's] capacity to retain counsel on his or her own behalf;

5. the extent to which a case is likely to turn on credibility determinations, and

6. whether the case will require testimony from expert witnesses.

*Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002) (citing *Tabron v. Grace*, 6 F.3d 147, 156 (3d Cir. 1993)); *see also Richardson*, 2022 WL 3214410, at *3.

Here, Defendant seeks counsel primarily to investigate and develop evidence purportedly demonstrating that the children's mother is incapacitated. But, as explained above, Defendant's filings do not allege facts that are even suggestive of incapacitation within the meaning of Guideline § 1B1.13(b)(3)(A). Because the motion can be resolved on the existing record and further development is unlikely to remedy that threshold deficiency, the interests of justice do not warrant appointment of counsel. Defendant's request for counsel is therefore denied.

## V.   CONCLUSION

For all of the reasons set forth above, Defendant's motions are denied.

Dated: February 13, 2026

KAREN M. WILLIAMS, U.S.D.J.

8